IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

STEVEN MAXWELL SAMUEL                                           PLAINTIFF

v.                      Civil No. 04-6140

DUANE BAUCUM, Corporal; MELVIN
STEED, Jail Administrator; LINDA ROWE,
Corporal; MATT AVANT, Deputy Jailer;
NURSE WHARTON; RICHARD GRINNIS,
Deputy Jailer; GARLAND COUNTY
SHERIFF'S OFFICE; SGT. ARNDT; DEPUTY
HOAR; and DEPUTY PRATT                                          DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Steven Maxwell Samuel, who is presently not incarcerated, brings this pro se civil rights action under 42 U.S.C. § 1983. Samuel alleges that while detained in the Garland County Detention Center, he was denied proper medical care and subjected to unconstitutional conditions of confinement.

On November 11, 2005, defendants filed a motion for summary judgment. (Docs. 26-29.) By order entered on December 19, 2005, Samuel was directed to complete, sign, date, and return an attached questionnaire that would serve as his response to the summary judgment motion. (Doc. 30.) On January 19, 2006, the plaintiff's response to the summary judgment motion was filed with the court. (Doc. 31.) The case is currently before the undersigned for the issuance of this report and recommendation on the summary judgment motion.

### I. Background

Samuel alleges that his constitutional rights were violated while he was detained in the Garland County Detention Center (GCDC). Samuel was arrested on charges of public

intoxication and disorderly conduct on Saturday, July 10, 2004. A parole violation was later established, and at all times relevant to this action, Samuel was a convicted felon. (Doc. 7 at ¶¶ 2-3; Doc. 31 at ¶¶ 9, 12.) He was transferred to the Arkansas Department of Correction on September 8, 2004. (Doc. 31 at ¶ 13.) Upon arrival to the GCDC on July 10, 2004, Samuel was "pulled from the car by [his] ankles and dropped to the concrete and hosed off with water." At that time, he "felt intense pain in [his] lower back." Four to six hours later, Samuel was brought to the booking room from a holding cell, where he requested to be transported to the hospital. Corporal Linda Rowe stated that the Hot Springs Police Department was responsible for Samuel's care, that she had checked with them, and that they refused to authorize Samuel's transport to the hospital. Samuel contends he needed treatment because of "very intense pain in [his] lower back and tail bone area." He did not, however, file a grievance about being denied transport to the emergency room on July 10, 2004, because he had appealed this decision to the shift supervisor and put in a request to speak with the lieutenant on Monday. Samuel also did not appeal any grievance about the July 10, 2004, denial of transport to the hospital because "the pain had begin [sic] to subside and [he] thought [he] would be alright, until [he] noticed a knot in [his] back and [his] shoulder began to feel dislocated." (Doc. 7 at ¶ 4.) Samuel declares that he verbally requested medical attention on several occasions and was told that he was faking his injuries. (Doc. 31 at ¶ 6.) In response to defendants' assertion that he made only four written medical requests, Samuel states that he made "numerous non-written medical complaints." (Doc. 31 at ¶ 14.)

Samuel alleges that from July 10, 2004 until August 27, 2004, he was denied medical treatment for his shoulder and back by jail administrator Mel Steed and the jail nurse Don

-2-

Wharton. Samuel states that he was seen by Nurse Wharton on August 10 or 17, 2004. At that time, Nurse Wharton checked Samuel's back and "prayed for [his] shoulder." (Doc. 7 at ¶¶ 5, 6.) When asked to state exactly what Nurse Wharton said when he was "praying" for Samuel's shoulder, Samuel states that Nurse Wharton only asked, "do you believe in spiritual healing?" Nurse Wharton also issued analgesic cream for Samuel's back. Samuel did file a grievance about the treatment he received from Wharton, however he did not appeal this grievance as provided for on the form because "it was delt [sic] with by Capt. Steed." (Doc. 7 at ¶ 6.)

On August 19, 2004, Samuel slipped in water that was leaking from the bottom of the toilet in his cell. The toilet had been leaking since July 15, 2004, when Samuel was placed in that cell. Nightly, or whenever Samuel requested them, water blankets were provided to absorb the leaking water, however often the water would leak past the blankets. When Samuel slipped on August 19, 2004, he did not fall all the way to the floor because he was able to catch himself, however he "twinged" his hip. He requested transport to the hospital. On August 21, 2004, Samuel wrote a letter to Lt. Murriano requesting medical assistance. He was "called up front," physically evaluated, and transported to the hospital. Samuel never filed a grievance about the need for medical care after the August 19, 2004 slip because he was taken to the hospital. (Doc. 7 at ¶ 7.) When Samuel complained about the water leaking, he was provided water blankets, encouraged to be careful around the leak, and advised that parts to repair the toilet had been ordered and that the toilet would be repaired as soon as the parts arrived. Samuel believes that he should have been moved out of the cell because of the "massive" leak. (Doc. 31 at ¶ 32.)

On August 27, 2004, Samuel again slipped and fell due to the leaking water in his cell. At the time, he was attempting to dress, and the water was "every where." Samuel was

AO72A
(Rev. 8/82)

transported to the hospital for medical treatment after this fall. Samuel did file a grievance about the August 27, 2004 fall. After transfer to the Arkansas Department of Correction, Samuel was issued a walker to assist him. Also, he states that an MRI shows that he has mild compression of several discs and a nerve impingement in his right hip. (Doc. 7 at ¶ 8.)

At one point, Sergeant Arndt ordered Deputies Pratt and Hoar to carry Samuel down two flights of stairs and place him in a one-person cell with inmate Billy Cannon. (Doc. 4; Doc. 7 at ¶¶ 9-11.) Samuel was detained for two hours in the cell with Cannon, who Samuel claims was classified as a "Code 60" detainee, meaning Cannon had anti-social personality. Samuel contends that he knows this because in 2002 Samuel was a booking room trustee, and Cannon was listed on the roster as a "Code 60" detainee at that time. Samuel alleges that he was placed with Cannon as a form of "reprisal" for submitting a grievance about the lack of medical treatment for another inmate. The only facts Samuel can present to support this claim is that he was moved to the cell with Cannon "for no apparent reason" and because after his three previous trips to the hospital he had been returned to population, but "after [he] wrote [his] last grievance, [he] was moved to holding. (Isolation.)" (Doc. 7 at ¶ 10.) Samuel claims that he suffered "mental anguish and stress" from having to watch Cannon eat his own feces and masturbate. (Doc. 31 at ¶ 36.) On two of the August 30, 2004 grievances Samuel submitted about being transferred, Samuel states that he had been placed on three days of bed rest on doctor's orders, but had been moved three times. He states that Captain Steed initially moved him for medical observation, but that there were no cameras in his cell for observation purposes. Sergeant Arndt responded that he could move Samuel to any cell and that Samuel was on medical observation, not suicide watch, and therefore there was no need for Samuel to be observed by camera. (Doc.

AO72A
(Rev. 8/82)

4 Attach.)

The defendants have attached to their summary judgment motion several exhibits including copies of three form medical complaints submitted by Samuel and a letter Samuel wrote to Lt. McMurrian (Doc. 28 at Ex. F), copies of several Prisoner Medical Treatment Reports (Doc. 28 at Ex. G), and four discharge records from two separate hospitals (Doc. 28 at Exs. H-K).

On August 3, 2004, Samuel submitted a medical complaint, stating that he had a spinal or lower back injury that was extremely painful and prevented him from sitting or laying down. He states that July 10, 2004, was the date of the problem. This complaint was picked up on August 4 by Officer Dunn, who verified the complaint and recommended that Samuel be seen by a doctor. A medical note to this complaint indicates that either a nurse or a doctor examined Samuel's lower back and diagnosed him with a bruise or possible hairline fracture. The medical professional also noted that Samuel declined ibuprofen for pain. (Doc. 28 at Ex. F.)

On August 21, 2004, Samuel sent a letter to Lt. McMurrian requesting medical attention "for an injury caused by ones-self." (Doc. 28 at Ex. F.) On August 21, Samuel was transported to St. Joseph's emergency room for treatment. (Doc. 31 at ¶ 20.) Also, plaintiff was provided his shoes from property because of his back injury. (Doc. 28 at Ex. F.)

On August 25, 2004, Samuel submitted a medical complaint, stating that he had slipped and fallen in water leaking from his toilet and "reinjured [sic]" his back. He complained that his lower back was throbbing and he could hardly walk. (Doc. 28 at Ex. F.) Samuel was taken to St. Joseph's emergency room on August 25, 2004. (Doc. 31 at ¶ 21.)

On August 28, 2004, Samuel submitted a medical complaint concerning "unbearable

-5-

lower back pain" along with loss of muscle control in his legs. He requested medical attention. This complaint was picked up by Officer Bransetter on August 28. (Doc. 28 at Ex. F.) Samuel was taken to the National Park Medical Center emergency room for treatment on August 28 for treatment. (Doc. 31 at ¶ 22.)

While at the GCDC, Samuel was treated by Dr. Hale, the jail doctor, on two occasions--August 26 and September 2, 2004. (Doc. 31 at ¶ 18.) In addition to treatment from Dr. Hale and Nurse Wharton, Samuel was transported to a local hospital on five separate occasions, including August 21, August 25, August 28, and August 31, 2004. (Doc. 31 at ¶¶ 19-23; Doc. 28 at Exs. H-K.) As a result of the emergency room and/or Dr. Hale's orders, detention center officials secured medications for Samuel beginning on August 21, 2004, and Samuel continued to receive those medications during the remainder of his incarceration at the GCDC. (Doc. 31 at ¶¶ 24-28.) These medications included Vioxx, Robaxin, Ibuprofen, Ultram, and Loritab (hydrocodone). (Doc. 7 at ¶ 13; Doc. 28 at Ex. M.)

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

AO72A
(Rev. 8/82)

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must show [1] a deprivation [under color of law] of [2] a right, privilege, or immunity secured by the Constitution or the laws of the United States." *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). "[T]o establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the 'cause in fact' of the plaintiff's injury." *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992).

**Deliberate Indifference to Serious Medical Needs**

Samuel contends that defendants were deliberately indifferent towards his serious medical needs of back, hip, and shoulder pain. This contention is found in three separate factual allegations: (1) that defendants failed to secure proper medical care for Samuel following his July 10, 2004 arrest, (2) that defendants failed to secure proper medical care for Samuel following two slips and falls on August 19 and 27, 2004, and (3) that defendants carried Samuel down two flights of stairs to place him on medical observation.

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an

AO72A
(Rev. 8/82)

excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

The GCDC has a policy concerning medical care for those detained there. The policy states that in situations where the inmate has a non-emergency medical condition, the inmate is directed to complete an Medical Request Form which is reviewed by a supervisor and then forwarded to Dr. Hale for review. If the decision is made that the inmate needs to see a doctor, an appointment is scheduled with Dr. Hale, who visits inmates at the jail at least once a week. In emergency situations, inmates are either transported to the emergency room or an ambulance is summoned to provide care to the inmates. (Doc. 28 at Ex. 1, Doc. 31 at Ex. 5.)

Samuel contends that defendants were deliberately indifferent towards his serious medical needs of pain in his lower back and shoulder. He alleges that defendants did not provide him with medical treatment for these conditions despite numerous verbal requests for help. The first evidence that Samuel made any request for medical assistance in writing, was through an August 3, 2004 medical complaint. Samuel was seen by a medical professional within a day in

response to this medical complaint. Although Samuel states that he had previously sent a letter to Lt. McMurrian requesting medical attention, the only letter addressed to Lt. McMurrian that either the plaintiff or the defendants have been able to produce is one dated August 21, 2004. (Doc. 1, Attach.; Doc. 28 at Ex. F.) Samuel states that he did not file a grievance about not receiving care after the July 10, 2004 incident because the pain had begun to subside and he believed he was getting better. Defendants were not deliberately indifferent to Samuel's serious medical needs when Samuel chose not to follow the outlined jail procedure for requesting medical care; a policy Samuel states that he chose not to follow because he was feeling better. When Samuel did follow jail policy and submitted a medical complaint, he was examined by a medical professional the next day. At that time, Samuel refused ibuprofen for the pain. Later, on either August 10 or 17, 2004, Samuel was examined by Nurse Wharton. Although Samuel claims that Nurse Wharton prayed for Samuel's shoulder, Samuel states that all Nurse Wharton said in this supposed prayer was to ask Samuel whether he believed in spiritual healing. Nurse Wharton also provided analgesic ointment for Samuel to apply to his back. Samuel has presented no evidence to support a claim that any defendant knew of a serious medical need from July 10 to August 19 and failed to act on that knowledge.

After Samuel's falls on August 19 and August 27, he was taken by detention center officials to the emergency room. His first trip was on August 21 for treatment after the August 19 fall. Samuel was again taken to the emergency room on August 25. After the August 27 fall, Samuel was taken to the emergency room of a different hospital on August 28. At this time, detention officials honored Samuel's request to be taken to a different hospital emergency room.

AO72A
(Rev. 8/82)

He was again taken to that emergency room on August 31. In addition to these numerous emergency room visits, Samuel was seen by Dr. Hale, the jail doctor, on two occasions and beginning on August 21, Samuel received several medications prescribed by the emergency room doctors and Dr. Hale. In light of this extensive care Samuel received following his falls on August 19 and 27, the defendants were not deliberately indifferent towards Samuel's serious medical needs resulting from the falls.

Samuel also claims that defendants should not have carried him downstairs due to his back pain. Defendants moved Samuel to a medical observation cell in order for the detention center officials to better monitor Samuel's condition. Because of his back pain, two officers carried Samuel rather than requiring him to walk. These actions were obviously taken to help Samuel receive better medical care, and defendants were not deliberately indifferent. Therefore, the summary judgment motion should be granted on the deliberate indifference claims.

**Unconstitutional Conditions of Confinement**

Samuel alleges that his Eighth Amendment rights were violated due to his being subjected to unconstitutional conditions of confinement, namely, a leaking toilet and being confined for two hours with an anti-social inmate.

The condition of a prisoner's confinement can give rise to an Eighth Amendment violation. To prevail on a conditions of confinement claim under the Eighth Amendment, an inmate must establish that (1) the condition complained of is sufficiently serious to implicate constitutional protection, and (2) prison officials acted with deliberate indifference to inmate health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811

AO72A
(Rev. 8/82)

(1994); *see also, Wilson v. Seiter,* 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991). In cases challenging prison conditions, the state of mind giving rise to liability is deliberate indifference. *See Wilson*, 501 at 303, 111 S. Ct. at 2327.

Mere negligence or inadvertence is insufficient to satisfy the deliberate indifference standard. *Wilson,* 501 U.S. at 305-06, 111 S. Ct. at 2328; *see Estelle,* 429 U.S. at 105, 97 S. Ct. at 291. Deliberate indifference requires the "unnecessary and wanton infliction of pain." *Givens v. Jones,* 900 F.2d 1229, 1232 (8th Cir.1990). The leaking toilet was not a sufficiently serious condition to warrant constitutional protection under the Eighth Amendment.

In order to satisfy the first part of the *Farmer* test, plaintiff must show that the standing-water problem rose to the level of a condition posing a substantial risk of serious harm to inmate health or safety. *See Farmer,* 511 U.S. at 834, 114 S. Ct. 1970. While the leaking toilet was a hazardous condition, federal courts have consistently held that slippery prison floors do not violate the Eighth Amendment. *See LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir. 1993) (noting that "slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment"); *Denz v. Clearfield County,* 712 F. Supp. 65, 66 (W.D. Pa. 1989) (finding no Eighth Amendment violation based on slippery floor in prison cell); *Mitchell v. West Virginia,* 554 F. Supp. 1215, 1216-17 (N.D. W. Va.1983) (finding no Eighth Amendment violation based on slippery floor in prison dining hall); *Robinson v. Cuyler,* 511 F. Supp. 161, 162, 163 (E.D. Pa. 1981) (finding no Eighth Amendment violation based on slippery floor in prison kitchen); *Tunstall v. Rowe,* 478 F. Supp. 87, 88, 89 (N.D. Ill. 1979) (finding no Eighth Amendment violation based on greasy prison stairway); *Snyder v. Blankenship,* 473 F. Supp. 1208, 1209,

1212-13 (W.D. Va. 1979) (finding no Eighth Amendment violation based on pool of soapy water from leaking dishwasher in prison kitchen), *aff'd,* 618 F.2d 104 (4th Cir. 1980).

Simply put, "[a] 'slip and fall,' without more, does not amount to cruel and unusual punishment.... Remedy for this type of injury, if any, must be sought in state court under traditional tort law principles." *See Mitchell,* 554 F. Supp. at 1217; *see also Snyder,* 473 F. Supp. at 1212-13 (noting that a prisoner's "slip and fall incident ... could just have easily occurred in any other state-owned facility," and that the "incident makes out nothing more than a common law tort").

Even if the court were to find that the leaking toilet posed a sufficiently serious condition to implicate the Eighth Amendment, Samuel fails to prove that the defendants acted with deliberate indifference towards this condition. Samuel states that the defendants provided blankets to soak up the water every evening or when he requested them. Further, jail officials recognized that the condition existed and informed Samuel that the parts to the repair the toilet were on order and that the toilet would be repaired when the parts arrived. Certainly, these facts evidence that the defendants were not deliberately indifferent to toward the condition. At most, the defendants acted with negligence, and negligence is not actionable under section 1983.

Similarly, Samuel's placement with an inmate who was rated anti-social and who, according to Samuel, ate feces and masturbated, does not constitute an Eighth Amendment violation. Samuel does not claim that he came in contact with any of the other inmate's bodily fluids or feces, and his confinement with that inmate lasted only two hours. *Cf. Smith v. Copeland*, 87 .F.3d 265, 268-269 (8th Cir. 1996) (expose to raw sewage and overflowed toilet

AO72A
(Rev. 8/82)

for four days did not implicate constitutional concerns); *Goldman v. Forbus*, 17 Fed. Appx. 487, 488 (8th Cir. 2001) (unpublished per curiam) (inmate who was forced to sleep in mattress on floor near toilet so that urine was sprinkled on him by other inmates for two days did not suffer unconstitutional punishment). Samuel's allegations concerning his conditions of confinement are insufficient as a matter of law, and therefore defendants' motion for summary judgment should be granted on those claims.

**Retaliation**

Finally, Samuel contends that he was subjected to retaliation for utilizing the grievance process. He claims that the defendants moved him to an observation cell instead of returning him to general population after he was returned from the hospital. Prisoners have no constitutional right to be housed in the cell or cell block of their choice, and jail officials may move an inmate for whatever reason or no reason at all. *See Goff .v. Burton*, 7 F.3d 734, 737-38 (8th Cir. 1993) (prison officials can transfer for any reason, except for retaliatory reasons alone), *see also Madewell v. Roberts,* 909 F.2d 1203, 1206 (8th Cir. 1990) (actions taken by prison officials against prisoner which would otherwise be proper become unconstitutional when taken in retaliation for prisoner's exercise of constitutional right). The plaintiff has the burden of proving that transfer would not have happened "but for" his exercising of his constitutional right, here filing inmate grievances. *See Ponchik v. Bogan,* 929 F.2d 419, 420 (8th Cir. 1991) (prisoner must establish transfer would not have occurred "but for" exercise of constitutional right; rejecting retaliatory-transfer claim even where filing of lawsuits against officials was clearly factor in transfer, because prisoner did not prove transfer would not have been made "but for"

AO72A
(Rev. 8/82)

litigation).

Samuel has failed to meet his burden to prove that a material issue still exists concerning the reason for his transfer to a holding cell. Jail officials indicated in their response to Samuel's grievance about the transfer, that he was being placed on medical observation. Samuel's claim that the transfer was for retaliatory reasons because he had previously been returned to general population after visiting the hospital is merely speculative. *See Atkinson v. Bohn,* 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) (speculative and conclusory allegations cannot support retaliation claim). Therefore, defendants are entitled to summary judgment on Samuel's claim that his transfer to a holding cell was for retaliatory reasons.

### IV. Conclusion

Therefore, I recommend that defendants' motion for summary judgment (Doc. 26) be granted.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of August 2006.

                                        **/s/ Bobby E. Shepherd**
_____
HON. BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)